IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DANIEL P. STODDARD, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV-05-489-S-MHW |
| | ) | |
| v. | ) | **MEMORANDUM ORDER** |
| | ) | |
| WARDEN, IDAHO STATE | ) | |
| MAXIMUM SECURITY INST., | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

     Pending before the Court in this habeas corpus matter is Respondent's Motion for Summary Judgment (Docket No. 16). Petitioner has filed a Response (Docket No. 17). Both parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case (Docket No. 8). Having reviewed the record in this case, the Court finds that oral argument is unnecessary. Based upon the state court record, and having considered the parties' arguments, the Court enters the following Order.

## I.

## BACKGROUND

On August 30, 2002, Petitioner was sentenced to a term of life imprisonment with a minimum of eleven years for his conviction of second degree murder after trial by jury in the First Judicial District Court in Kootenai County, Idaho. Petitioner filed a direct appeal with the Idaho appellate courts. The Idaho Court of Appeals affirmed the state district court's decision on September 9, 2004. The Idaho Supreme Court denied Petitioner's petition for review on December 20, 2004.

He next filed a petition for writ of certiorari with the United States Supreme Court, challenging various aspects of the trial court's ruling refusing to allow him to assert an insanity defense at trial. That petition was denied on October 3, 2005. *See Stoddard v. Idaho*, 126 S.Ct. 40 (2005). Petitioner's motion for leave to file a petition for rehearing before the United States Supreme court was denied on January 9, 2006. *See Stoddard v. Idaho*, 126 S.Ct. 1127 (2006).

Petitioner filed the federal Petition which is the subject of this action on November 30, 2005. Petitioner's first claim is that his Fourteenth Amendment rights were violated when the trial court refused to allow him to present evidence of, or instruct the jury on, an "insanity defense." Petitioner's second claim is that Idaho's abolition of the insanity defense and imprisonment of mentally ill defendants violates the cruel and unusual punishment clause of the Eighth Amendment.

Respondent has filed a Motion for Summary Judgment, arguing that Petitioner's claims are barred by *Teague v. Lane*, 489 U.S. 288 (1989), and that Petitioner's Eighth Amendment claim is procedurally defaulted for failure to raise it in the state court system.

## II.

## MOTION FOR SUMMARY JUDGMENT

**A.     Standard of Law Governing Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure. Rule 11, Rules Governing Section 2254 Cases. Accordingly, summary judgment motions are appropriate in habeas corpus proceedings where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977).

**B.     Idaho Court of Appeals's Decision**

In Petitioner's case, the Idaho Court of Appeals rejected Petitioner's attack on Idaho's lack of an affirmative insanity defense, reasoning that:

> [a]lthough I.C. § 18-207 eliminates defenses based on a defendant's mental condition, an accused may still present a defense that, because of his mental illness, he could not formulated the requite intent for the charged crime.

MEMORANDUM ORDER  3

> Thus, the "safeguard" that was referenced in *Card* - the ability to show that mental illness negates the mens rea element - remains under Idaho law even after the amendment of I.C. § 18-115.

*State's Exhibit B-3*, at p. 11.

Idaho's statutory scheme also contains the following provision: "No person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted, sentenced or punished for the commission of an offense so long as such incapacity endures." I.C. § 18-210.

**C.     Discussion of *Teague* Issue**

Respondent argues that the retroactivity rule announced in *Teague v. Lane* bars Petitioner from bringing his claims that unavailability of an insanity defense in Idaho is unconstitutional under the Fourteenth and Eighth Amendments. Under *Teague*, "before a state prisoner may upset his state conviction or sentence on federal collateral review, he must demonstrate as a threshold matter that the court-made rule of which he seeks the benefit is not 'new.'" *O'Dell v. Netherland*, 521 U.S. 151, 156 (1997). A rule is "new" when "it breaks new ground or imposes a new obligation on the State of the Federal Government," or, "[t]o put it differently, a case announces a new rule if the result was not dicated by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301.

*Teague* applies only to new rules of criminal procedure. Decisions of "criminal procedure" are those decisions that implicate how the criminal trial process functions. Decisions of "substantive criminal law," by contrast, are those that reach beyond issues of

MEMORANDUM ORDER  4

procedural function and address the meaning, scope, and application of substantive criminal statutes.  *Bousley v. U.S.*, 523 U.S. 614, 620 (1998).  For *Teague* purposes, a new rule is one of "procedure" if it impacts the operation of the criminal trial process, but it is one of "substance" if it alters the scope or modifies the applicability of a substantive criminal statute.  *Bousley*, 523 U.S. at 620.

To determine whether a claim is barred by *Teague*'s non-retroactivity principles, a reviewing court engages in a three-step process.  First, the court must ascertain the date on which the defendant's conviction and sentence became final.  *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994).  Finality has been defined as "a case in which judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied."  *Griffith v. Kentucky*, 479 U.S. 314 (1987).

Second, the court must "[s]urve[y] the legal landscape as it then existed," and "determine whether a state court considering [the defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution."  *Id.* at 390 (citations omitted).  If the rule is considered "new," the court must proceed to the third step and determine whether either of the two announced exceptions applies, in which case the new rule could be applied retroctively to defendants on collateral review.  *Teague*, 489 U.S. at 307.  The presumption against retroactivity is overcome only if (1) the new rule prohibits "a certain category of punishment for a class of defendants because of their status or offense," *Penry*

MEMORANDUM ORDER  5

*v. Lynaugh*, 492 U.S. 302, 330 (1989), *abrogated on other grounds by Atkins v. Virginia*, 536 U.S. 304 (2002), or (2) presents a new "watershed rule of criminal procedure" that enhances accuracy and alters our understanding of bedrock procedural elements essential to the fairness of a particular conviction.  *Teague*, 489 U.S. at 311.

The Court agrees that Petitioner seeks a new rule with his argument regarding how and when a defendant can present evidence of mental illness during a trial.[1]  No controlling precedent supporting Petitioner's claims existed in January 2006, when the state court judgment became final.[2]   Therefore, were this Court to find the Idaho statute unconstitutional in this case, it would be creating a new rule.

The Court now determines whether a *Teague* exception applies to allow the Court to hear the claim.  The first exception was found applicable in *Penry v. Lynaugh*, where the Court determined that "if we held, as a substantive matter, that the Eighth Amendment

---

[1] Although not an argument made by Petitioner, there is an argument that the lack of an insanity defense is a substantive rule not subject to *Teague*.  The Supreme Court has clarified that "[a] rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes"; the rule is deemed procedural if it "regulates only the manner of determining the defendant's culpability."  *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004).  It is already clear that the Constitution has mandated that insane persons cannot be required to stand trial or be executed after a finding of guilty; arguably, Petitioner's claims may fit this same category, exempting them from *Teague*. In any event, the Court's discussion on the first *Teague* exception and on the merits addresses such an argument.

[2] Review of a state criminal conviction by the United States Supreme Court is "considered direct review of the conviction." *Smith v. Bowersox*, 159 F.3d 345, 347-48 (9th Cir. 1998); *see also Bowen v. Roe*, 188 F.3d 1157, 1158-60 (9th Cir. 1999).  The Court will assume that this period also includes any petition for rehearing, through its denial by the United States Supreme Court.  *See Blair v. Armontrout*, 994 F.2d 532, 532-33 (8th Cir. 1993); *Hanover Ins. Co. v. United States*, 880 F.2d 1503, 1509 (1st Cir. 1989).

prohibits the execution of mentally retarded persons such as Penry regardless of the procedures followed, such a rule would fall under the first exception to the general rule of nonretroactivity and would be applicable to defendants on collateral review." 492 U.S. at 329. Petitioner's proposed rule seems analogous to the *Penry* issue; therefore, the Court concludes that, if relief is warranted under § 2254, the first exception of *Teague* would apply to allow its retroactive application to Petitioner.

### D. Discussion of Merits

Petitioner argues that the insanity defense is a deeply-rooted fundamental due process right, and that Idaho Code § 18-207(1) violates the Fourteenth Amendment. He argues that "forty-six states and the federal government recognize that mental illness may constitute an affirmative defense to criminal charges in a way other than relating merely to the ability to form the required mental state. Petitioner also argues that the Eighth Amendment prohibits Petitioner's life sentence. Petitioner's arguments, while somewhat persuasive under a different standard of law, do not warrant relief under § 2254(d).

In order to obtain federal habeas corpus relief from a state court judgment, the petitioner must show that the state court's adjudication of the merits of his federal claim either:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

MEMORANDUM ORDER  7

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 385 (2000), the United States Supreme Court explained that, to prevail under § 2254(d)(1), a petitioner must show that the state court was "wrong as a matter of law," in that it "applie[d] a legal rule that contradicts our prior holdings" or that it "reache[d] a different result from one of our cases despite confronting indistinguishable facts." *Ramdass v. Angelone*, 530 U.S. 156, 165-66 (2000) (citing *Williams v. Taylor*). Or, a petitioner can prevail by showing that the state court was "[objectively] unreasonable in applying the governing legal principle to the facts of the case," or "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled," *Ramdass v. Angelone*, 530 U.S. at 166 (citing *Williams v. Taylor*); however, a petitioner cannot prevail under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411.

The provision in § 2254(d)(1) requiring that the standard of law be "clearly established Federal law" means that federal district courts must look to the "holdings, as opposed to the dicta" of United States Supreme Court decisions existing at the time of the relevant state court decision. *Williams*, 529 U.S. at 412. The Supreme Court has made it clear that federal courts may not to stretch existing law to grant relief in habeas corpus cases, in contravention to the legislature's manifested intent in the strict language of § 2254(d)(1). For example, in *Carey v. Musladin*, 127 S.Ct. 649 (2006), where spectators

MEMORANDUM ORDER  8

at the criminal trial wore buttons displaying the victim's image, the Supreme Court reversed the Ninth Circuit's grant of habeas relief on the following basis:

> This Court has never addressed a claim that such private-actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a fair trial. And although the Court articulated the test for inherent prejudice that applies to state conduct in *Williams* and *Flynn*, we have never applied that test to spectators' conduct. Indeed, part of the legal test of *Williams* and *Flynn*-asking whether the practices furthered an essential state interest-suggests that those cases apply only to state-sponsored practices.
>  \* \* \*
> Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here, it cannot be said that the state court "unreasonabl[y] appli[ed] clearly established Federal law." § 2254(d)(1). No holding of this Court required the California Court of Appeal to apply the test of Williams and Flynn to the spectators' conduct here. Therefore, the state court's decision was not contrary to or an unreasonable application of clearly established federal law.

127 S.Ct. at 653-54.

To date, the Supreme Court has chosen not to address the constitutionality of Idaho's insanity defense scheme, even though presented with the opportunity to do so. In Petitioner's case, the United States Supreme Court denied certiorari, *see Stoddard v. Idaho*, 126 S.Ct. 40 (2005), and denied his petition for rehearing, *see* 126 S.Ct. 1127 (2006). *See also State v. Card*, 121 Idaho 425, 429, 825 P.2d 1081, 1085 (Idaho 1991), *cert. denied* 506 U.S. 915(1992); *State v. Odiaga*, 125 Idaho 384, 871 P.2d 801 (Idaho 1994), *cert. denied*, 513 U.S. 952(1994); and *cert. denied*, 513 U.S. 955 (1994).    The Supreme Court articulated the reasoning behind its reluctance to dictate the boundaries of

MEMORANDUM ORDER  9

such concepts as mens rea and an insanity test in *Powell v. Texas*, 392 U.S. 514, 536 (1968). Therein, the Court noted:

> The doctrines of actus reus, mens rea, insanity, mistake, justification, and duress have historically provided the tools for a constantly shifting adjustment of the tension between the evolving aims of the criminal law and changing religious, moral, philosophical, and medical views of the nature of man. The process of adjustment has always been thought to be the province of the States.
>
> Nothing could be less fruitful than for this Court to be impelled into defining some sort of insanity test in constitutional terms. Yet, that task would seem to follow inexorably from an extension of Robinson to this case. If a person in the "condition" of being a chronic alcoholic cannot be criminally punished as a constitutional matter for being drunk in public, it would seem to follow that the person who contends that, in terms of one test, "his unlawful act was the product of mental disease or mental defect," would state an issue of constitutional dimension with regard to his criminal responsibility had he been tried under some different and perhaps lesser standard, e.g., the right-wrong test of *M'Naghten*'s Case.

In a similar vein, in a dissenting opinion in *Ake v. Oklahoma*, 470 U.S. 68 (1985), Justice Rehnquist stated, "It is highly doubtful that due process requires a State to make available an insanity defense to a criminal defendant, but in any event if such a defense is afforded the burden of proving insanity can be placed on the defendant."

Likewise, in a concurring opinion in *Foucha v. Louisiana*, 504 U.S. 71(1992), Justice O'Connor specifically referred to the Idaho statute Petitioner contests when she stated:

> The second point to be made about the Court's holding is that it places no new restriction on the States' freedom to determine whether and to what extent mental illness should excuse criminal behavior. The Court does not indicate that States must make the insanity defense available. *See* Idaho Code § 18-207(a) (1987) (mental condition not a defense to criminal

MEMORANDUM ORDER  10

charges); Mont. Code Ann. § 46-14-102 (1991) (evidence of mental illness admissible to prove absence of state of mind that is an element of the offense).

*Foucha*, 504 U.S. at 88-89 (O'Connor, J., concurring).  In a dissenting opinion in *Foucha*, speaking to an uncontested point, Justice Kennedy similarly opined: "Consistent with the general rule that the definition of both crimes and defenses is a matter of state law, *see Patterson v. New York*, 432 U.S. at 210, the States are free to recognize and define the insanity defense as they see fit."  *Foucha*, 504 U.S. at 96 (Kennedy, J., dissenting).

In *Medina v. California*, 505 U.S. 437, 449 (1992), the Court distinguished the narrow issue decided therein from the issue of whether an insanity defense is required by the Constitution: "Moreover, while the Due Process Clause affords an incompetent defendant the right not to be tried, we have not said that the Constitution requires the States to recognize the insanity defense" (internal citations omitted).

In 2002, the United States Supreme Court in *Atkins v. Virginia*, 536 U.S. 304 (2002), held that it was a violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment to execute a mentally retarded individual.[3]   In *Atkins*, the Court again referred to its hands-off approach to the insanity defense issue:

> Not all people who claim to be mentally retarded will be so impaired as to fall within the range of mentally retarded offenders about whom there is a national consensus. As was our approach in *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), with regard to insanity, "we leave to the State[s] the task of developing appropriate ways to enforce

---

[3] Atkins overruled *Penry v. Lynaugh*, 492 U.S. 302 (1989).

the constitutional restriction upon [their] execution of sentences." *Id*., at 405, 416-417, 106 S.Ct. 2595.

536 U.S. at 317.  Therefore, *Atkins* offers no support for Petitioner's Fourteenth Amendment claim.

Nor does *Atkins* provide support for Petitioner's Eighth Amendment claim, as the Court focused particularly on the unique aspects of the death penalty and death penalty law:

> This consensus [against imposing the death penalty on the mentally retarded] unquestionably reflects widespread judgment about the relative culpability of mentally retarded offenders, and the relationship between mental retardation and the penological purposes served by the death penalty. Additionally, it suggests that some characteristics of mental retardation undermine the strength of the procedural protections that our capital jurisprudence steadfastly guards.

536 U.S. at 317.  The *Atkins* Court also observed that the "deficiencies [of the mentally retarded] do not warrant an exemption from criminal sanctions, but they do diminish their personal culpability," which cuts against Petitioner's argument that life imprisonment for the mentally retarded is unconstitutional.  *Id*. at 318.

In short, no case from the United States Supreme Court clearly held that an insanity defense is required under the Fourteenth and Eighth Amendment at the time his conviction became final in January 2006.  As a result, he has not met the standard for relief set forth in § 2254(d)(1).

In addition, many lower case courts have rejected claims like Petitioner's. Respondent bolsters his argument for summary judgment by citing to the following lower

MEMORANDUM ORDER  12

court cases to demonstrate that the Idaho Court of Appeals decision was not contrary to, or did not involve an unreasonable application of, United States Supreme Court precedent: (1) *State v. Herrera*, 895 P.2d 359, 364 (Utah 1995) ("[W]hat little the United States Supreme Court has said suggests that there is no federal due process right to an independent defense of insanity."); (3) *State v. Korell*, 690 P.2d 992, 999 (Mont. 1984) ("We reject appellant's contention that from the earliest period of the common law, insanity has been recognized as a defense.  What we recognize is that one who lacks the requisite criminal state of mind may not be convicted or punished."); (4) *State v. Bethel*, 66 P.3d 840, 851 (Kan. 2003) ("We conclude that the affirmative insanity defense is a creature of the 19th century and is not so ingrained in our legal system to constitute a fundamental principle of law."); *State v. Francis*, 701 N.W.2d 632, 637 (Wis. Ct. App. 2005)  ("While we conclude that neither the United States nor the Nevada Constitutions require that legal insanity be procedurally raised as an affirmative defense or by way of a plea of "not guilty by reason of insanity," both Constitutions prohibit an individual from being convicted of a criminal offense without possessing the requisite criminal intent to commit the crime."); and (5) *Despears v. Milwaukee County*, 63 F.3d 635, 637 (7th Cir. 1995) ("A state, although limited in its right under the Constitution to put to death or even on trial a person who is mentally incompetent . .  is not constitutionally obligated to recognize a defense of insanity - several states have abolished the defense.") .

MEMORANDUM ORDER  13

This Court agrees that the foregoing lower court cases show that Idaho Court of Appeals's decision is within the scope of "reasonable" applications of Supreme Court law regardng Petitioner's claims. *See Duhaime v. Ducharme,* 200 F.3d 597 (9th Cir. 1999).

As a result of all of the foregoing, the Court concludes that Petitioner has not met the standard of § 2254(d)(1) for habeas corpus relief, that is, he has not shown that the Idaho Court of Appeals's decision on either of his claims was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

Finally, more current case law from the United States Supreme Court reveals the Supreme Court's intent to continue to refrain from dictating an insanity defense rule to the states. In *Clark v. Arizona*, 126 S.Ct. 2709 (June 2006), the Court held that Arizona's narrowing of its insanity test did not violate due process, and that exclusion of evidence of mental illness and incapacity due to mental illness on the issue of mens rea did not violate due process. While post-January 2006 case law cannot be considered "clearly established" law at the time Petitioner's conviction became final, it does show a continuing trend in the law that is contrary to Petitioner's arguments.

### E.     Respondent's Procedural Default Defense as to the Second Claim

Respondent also argues that Petitioner has procedurally defaulted his second claim - that the lack of an insanity defense violates the Eighth Amendment - by failing to properly present it to the Idaho Supreme Court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). While Petitioner may not have presented the issue to the Idaho Supreme

MEMORANDUM ORDER  14

Court exactly as he presents it here, he did brief the issue of whether failing to allow Petitioner to present an insanity defense and failing to have the jury instructed on the insanity defense violated the Eighth Amendment, citing to *Atkins*. *See Brief* at pp. 13, 20. Therefore, Petitioner could amend his federal Petition in this case to more clearly state an exhausted Eight Amendment claim. However, such amendment would be futile given the Court's analysis above that the claim fails on its merits under the habeas corpus standard of law dictated by Congress. As a result of the foregoing, Petitioner's Petition shall be dismissed with prejudice.

### F.   Instructions for Appeal

Before a petitioner may appeal from the dismissal of a 28 U.S.C. § 2254 petition, he must first obtain a certificate of appealability by filing a request for a certificate of appealability with the federal district court. 28 U.S.C. § 2253(c). Until a certificate of appealability has been issued, an appellate court lacks jurisdiction to rule on the merits of an appeal. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). A federal district court will not issue a certificate of appealability absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that reasonable jurists would find debatable both the merits of the constitutional claims and any dispositive procedural rulings by the district court. *Miller-El v. Cockrell*, 537 at 336 (2003).

MEMORANDUM ORDER  15

## III.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Respondent's Motion for Summary Judgment (Docket No. 16) is GRANTED. Petitioner's Petition is dismissed with prejudice.

DATED: **February 26, 2007**

Honorable Mikel H. Williams
United States Magistrate Judge

MEMORANDUM ORDER  16